FILED
CLERK'S DISTRICT COURT

27 JAN 03 AM 10: 33

DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK

1  L. CLARK DONALDSON, #4822
   Attorney for Mr. Croxford
2  43 East 400 South
   Salt Lake City, Utah 84111
3  Telephone:  (801) 220-0700
   Facsimile: (801) 364-3232
4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    DISTRICT OF UTAH, CENTRAL DIVISION

8  ─────────────────────────────────────

9  UNITED STATES OF AMERICA,            )
                                        )
10            Plaintiff,                )    DFENDANT'S MOTION TO
                                        )    DISMISS INDICTMENT
11  v.                                  )    FOR LACK OF JURISDICTION
                                        )
12  BRENT LEE CROXFORD                  )
                                        )    Case No. 2:02-CR-0302 PGC
13            Defendant.                )
   ─────────────────────────────────────

14      The Defendant, Brent Lee Croxford (hereinafter Mr. Croxford), by and through counsel, L. Clark

15  Donaldson, moves this Court to dismiss the Indictment on the following grounds:  (1) the operative

16  language of 18 U.S.C. § 2251(a), prohibiting producing visual depictions of conduct involving

17  minors using innocuous "materials" to produce the depictions that have moved in commerce and  18

18  U.S.C. § 2252A(a)(5)(B), prohibiting the possession of child pornography that was produced using

19  innocuous "materials" that have moved in commerce, exceeds Congress' authority under the

20  Commerce Clause; (2) if the statutes are constitutional on their face, the prosecution of Mr. Croxford

21  nonetheless exceeds Congress' authority; (3) the language of sections 2251(a) and 2252A(a)(5)(B)

22  underlying the indictment in this case deny Mr. Croxford equal protection of the laws; (4) the failure

23  of the statutory schemes to define the term "materials" render the statutes unconstitutionally vague.

24
                            **TABLE OF CONTENTS**
25  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
26        I.      Introduction and Historical Background . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42

II.   The Legislative History of 18 U.S.C. § 2252A(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . 6

III.   The Statutes Must be Struck Down As Facially Unconstitutional . . . . . . . . . . . . . . . 9

    A.   *Lopez, Morrison,* and *Jones* Require that the Jurisdictional Element
       Serve as a Meaningful Restriction on Congress' Regulatory Power . . . . . . . . 9

    B.   The Statutes are Facially Invalid Because the Jurisdictional Element Has No
       Meaningful Connection to the Targeted Conduct and Because The
       Jurisdictional Element Would Cede to Congress a General Police Power . . 13

    C.   The Court Cannot Insert a "Substantial Effects" Jurisdictional Element
       Into the Statutes Because that Element Was Not Included By Congress,
       And Because There are No Current Findings to Support a Market
       Rationale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   Even if the Statutes are Facially Valid, the Instant Prosecution Must Fail Under the
    Case-By-Case Analysis Required By *Lopez, Morrison,* and *Jones* Because the
    Facts Fail to Demonstrate a Sufficient Nexus to Interstate Commerce . . . . . . . . . . 22

V.   The Portion of Sections 2251(a) and  2252A Supporting the Indictment Must be
Struck Down as Violative of the Equal Protection Clause of the Constitution . . . . . . . . . . . . . . . . . 23

VI.   Sections 2251(a) and 2252A(a)(5)(B) are Void for Vagueness Because the Term
"Materials" is Not Defined Anywhere in the Statute, Thus Inviting Arbitrary Enforcement and
    Precluding Ordinary Persons From Determining Whether Their Conduct Will
    Violate Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

1

2

3    *Baxtrom v. Herold*, 383 U.S. 107 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

4    *Bush v. Gore*, 121 S. Ct. 525 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

5    *FTC v. Bunte Brothers*, 312 U.S. 349 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6    *Gulf Oil Corp. v. Copp Paving Co*, 419 U.S. 186 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 19

7    *Hodel v. Virginia Surface Mining & Reclamation Association*, 452 U.S. 264 (1981) . . . . . . . . . 3,24

8    *Jones v. United States*, 529 U.S. 848 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

9    *United States v. American Building Maintenance Industries*, 422 U.S. 271 (1975) . . . . . . . . . . . 19

10   *United States v. Angle*, 234 F.3d 326 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . passim

11   *United States v. Bausch*, 140 F.3d 739 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . passim

12   *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . passim

13   *United States v. Cyphers*, 604 F.2d 635 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

14   *United States v. Fogarty*, 663 F.2d 928 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

15   *United States v. Fox*, 95 U.S. 670 (1877) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16   *United States v. Jones*, 564 F.2d 1315 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . 18,20

17   *United States v. Kallestad,* 236 F.3d 465 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 26,32

18   *United States v. Lanier*, 520 U.S. 259 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

19   *United States v. Lopez*, 514 U.S. 549 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

20   *United States v. Makowski*, 120 F.3d 1078 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 26,27

21   *United States v. Morrison*, 529 U.S. 598 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

22   *United States v. Nukida*, 8 F.3d 665 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

23   *United States v. Oliver*, 60 F.3d 547 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

24   *United States v. Robinson*, 137 F.3d 652 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 5,18,22

25   *United States v. Rodia*, 194 F.3d 465 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . passim

26   *United States v. Winningham*, 953 F. Supp. 1068 (D. Minn. 1996) . . . . . . . . . . . . . . . . . . . 5

*Wickard v. Filburn*, 317 U.S. 111 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FEDERAL STATUTES**

18 U.S.C. § 844 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,16

18 U.S.C. § 2251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2252A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. § 13981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. I, § 8, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. amend. X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**STATE STATUTE**

Utah Code Ann. § 76-5a-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**OTHER AUTHORITIES**

Note, The Right Results for All the Wrong Reasons: An Historical and Functional Analysis
   of the Commerce Clause, 53 Vand. L. Rev. 271 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Reynolds & Denning, Lower Court Readings of Lopez, or What if the Supreme Court Held a
   Constitutional Revolution and Nobody Came?, 2000 Wis. L. Rev. 369, 381 (2000) . . . 18,21

John Quigley, Child Pornography and the Right to Privacy, 43 Fla. L. Rev. 347 (1991) . . . . . . . . . 9

Litman & Greenberg, Federal Power and Federalism: A Theory of Commerce-Clause
   Based Regulation of Traditionally State Crimes, 47 Case W. L. Rev. 921
   (Spring 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Shannon, The Jurisdictional Limits of Federal Criminal Child Pornography Law,
   21 U. Haw. L. Rev. 73 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**BACKGROUND**

Defendant Brent Lee Croxford is charged in Count One with violation of 18 U.S.C . § 2251(a) and Count Two with violation of 18 U.S.C. § 2252A(a)(5)(B).[1] The former statute prohibits the use of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and the visual depiction must have been produced using "materials" that have been mailed, shipped and transported in interstate and foreign commerce. The latter statute prohibits knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce." The "material" alleged in Count One is a computer disk and digital computer that were manufactured outside the State of Utah. The "material" alleged in Count Two is a computer hard drive, which was

---

[1] The relevant provisions of the charged statutes are as follows:

§ 2251    Sexual exploitation of children

(a)    Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), ... if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce....

§ 2252A   Certain activities relating to material constituting or containing child pornography
(a)    Any person who --
    (5)    either --
        (A)    in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian county . . . , knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or
        (B)    knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer,
shall be punished as provided in subsection (b).

1

1   manufacture outside the State of Utah as well.  All items were content-free at the time they arrived in

2   Utah, and federal jurisdiction arises solely because these items were "mailed, shipped, or

3   transported" into Utah from another location before they were used for illicit activities.

4        The indictment must be dismissed for four reasons.  First, the statutes under which Mr.

5   Croxford is charged exceed Congress' authority under the Commerce Clause because it is

6   impermissible for Congress to predicate federal jurisdiction on the provenance of innocuous items

7   that are subsequently used to engage in criminal conduct.  Second, even if the statutes are not facially

8   invalid, they are unconstitutional as applied because the jurisdictional element must act as a

9   meaningful restriction on federal regulation and there is insufficient proof of an impact on national

10  commercial activity in this case.  Third, both counts must be dismissed because the application of the

11  statutes on these facts would deny Mr. Croxford equal protection of the laws.  Finally, because the

12  statutes fail to define the term "materials," they must be struck down as impermissibly vague.

13                              **ARGUMENT**

14  **I.     Introduction and Historical Background**

15

16       The State of Utah has enacted a statute outlawing the sexual exploitation of children through

17  the production, distribution, or possession of child pornography.[2]

18       Under Utah's statute, an offense of sexual exploitation of a minor is punishable as a second

19  degree felony for each depiction.  *See* Utah Code Ann. § 76-5a-3(3).  In this case, for example, Mr.

20  Croxford was charged via amended information in Third District Court, State of Utah with thirteen

21  counts of Sexual Exploitation of a Minor on June 7, 2002.  *See* Third District Court Docket printed

22  June 24, 2002, attached hereto as Exhibit A.

23       While the states may criminalize such activity pursuant to their general police power, the

24

25       [2] *See* Utah Code Ann. § 76-5a-3 (prohibiting knowing production, distribution, possession or

26  possession with intent to distribute child pornography; or a minor's parent or guardian knowingly
    permitting or consenting to the creation such material).

1   United States does not possess the same broad power to criminalize wholly intrastate criminal

2   activity.  Rather, the federal government is one of specifically enumerated powers.[3]  Congress is

3   authorized to define criminal offenses against the United States to the extent that those offenses bear

4   some relation to the execution of a power of Congress, or to some matter within the jurisdiction of

5   the United States.  *See United States v. Fox*, 95 U.S. 670, 672 (1877).  For this reason, sexual

6   exploitation of children or simple possession of child pornography cannot be federal crimes unless

7   the statutes proscribing such conduct rest upon an enumerated power of Congress or otherwise bears

8   some relation to a matter within the jurisdiction of the United States.

9           Under the Commerce Clause, Congress is authorized "[t]o regulate Commerce with foreign

10   Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. This

11   power is not limitless, but is instead carefully circumscribed, because an overly broad reading of the

12   Commerce Clause would obliterate the system of federalism intended by the Framers of the

13   Constitution and underscored by the Tenth Amendment.  *See United States v. Lopez*, 514 U.S. 549,

14   567 (1995).  As the Supreme Court has explained, the Commerce Clause power extends to include:

15           those activities intrastate which so affect interstate commerce, or the exertion of the power of
            Congress over it, as to make regulation of them appropriate means to the attainment of a
16           legitimate end, the effective execution of the granted power to regulate interstate commerce.

17   *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 277 (1981) (internal citation
    and quotation marks omitted).

18
            As with the jurisdictional elements of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B), which
19
    require a showing that some component of the offending material once moved "in interstate or
20
    foreign commerce," Congress frequently relies upon its Commerce Clause power to criminalize
21
    activities that would otherwise fall outside the jurisdiction of the federal government.  *See* Note, the
22
    Right Results for All the Wrong Reasons:  An Historical and Functional Analysis of the Commerce
23
    Clause, 53 Vand. L. Rev. 271, 283 (2000) (footnote omitted) (noting Congress' reliance on
24

25           [3] Under the Tenth Amendment, "The powers not delegated to the United States by the
    Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the
26   people." U.S. Const. amend. X.

1   Commerce Clause power to expand the number of federal crimes during past two centuries from 17

2   to more than 3000).  In recent years, the Supreme Court has placed important limits on Congress'

3   efforts to expand its Commerce Clause power beyond the confines that had previously been set.  In

4   three cases, *Lopez*, 514 U.S. at 549, *United States v. Morrison*, 529 U.S. 598 (2000) and *Jones v.*

5   *United States*, 529 U.S. 848 (2000), the Court sought to re-emphasize the careful distinctions

6   observed by the Framers with respect to Congress' authority over matters of *national* rather than

7   *local* concern.  In part, the Court suggested that Congress' authority to criminalize a given activity

8   under the Commerce Clause would stem from the commercial nature of that activity.   The Court has

9   also observed that Congress' inclusion of a jurisdictional element in a statute is not sufficient by

10  itself to ensure the constitutionality of a statute, because a reviewing court must independently assess

11  the relationship of the regulated activity to commerce, and must also assess jurisdiction on a case-by-

12  case basis.

13         Here, in Counts One and Two, the defendant is alleged to have violated 18 U.S.C. §§ 2251(a)

14  by his possession of a digital computer and computer disk and  2252A(a)(5)(B) by his possession of

15  a hard drive, both shipped from out-of-state while content-free, and both of which now contain

16  images of child pornography.  These products are of the type commercially available at virtually any

17  computer store for a virtually limitless variety of personal uses.

18         Mr. Croxford's conduct may be characterized as taking digital images of his then daughter,

19  C.C. and simple possession of child pornography, which are generally not federal crimes.  The

20  jurisdictional hook bringing Mr.  Croxford within the ambit of the federal government is the

21  statutory requirement that the images of child pornography were "produced using materials that had

22  been mailed, shipped or transported in interstate or foreign commerce." 18 U.S.C. § § 2251(a) and

23  2252A(a)(5)(B).  These sections would appear to permit federal regulation of a defendant's activity

24  in any case where some component of the defendant's criminal conduct had been mailed, shipped, or

25  transported from out-of-state before the defendant used it.

26         The Sixth Circuit has observed that serious questions exist regarding the constitutionality of

4

such statutory language in § 2252A(a)(5)(B).  *See United States v. Corp*, 236 F.3d 325, 332 (6th Cir.

2001) ("we are faced with serious questions about the constitutionality of the Act under the

Commerce Clause power of Congress"). The Third Circuit has also questioned the constitutionality

of the jurisdictional element, noting persuasively:

> As a practical matter, the limiting jurisdictional factor is almost useless here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce and will therefore fall within the sweep of the statute. At all events, it is at least doubtful in this case that the jurisdictional element adequately performs the function of guaranteeing that the final product regulated substantially affects interstate commerce.

*United States v. Rodia*, 194 F.3d 465, 473 (3d Cir. 1999).  Echoing the Third Circuit, the Fifth

Circuit observed in *United States v. Kallestad*, 236 F.3d 225, 229 (5th Cir. 2000), that the

jurisdictional element "has no principled limit."  While the statute has been upheld in at least one

circuit as a permissible regulation of items "in commerce," the courts that have upheld the statute as

written have done so without analysis.  *See United States v. Bausch*, 140 F.3d 739, 741 (8th Cir.

1998) (upholding statute without discussion after noting jury's finding that "Bausch took the

photographs using a Japanese camera that had been transported in interstate or foreign commerce");

*see also United States v. Winningham*, 953 F.Supp. 1068 (D. Minn. 1996) (upholding statute as

category two regulation of things "in" commerce).[4]

    In other circuits, § 2252A(a)(5)(A) has been upheld against constitutional challenges only

after the reviewing courts have explicitly refused to assess the statute as written.  Instead, those

courts have ignored the proffered jurisdictional basis and have instead relied upon the purported

existence of a national market for child pornography to conclude that the statute regulates an activity

with a "substantial effect" on commerce.  *Cf. Kallestad*, 236 F.3d at 229 (noting that the

---

[4] Not even the Ninth Circuit has addressed the question of the statute's constitutionality.   In the recent case of *United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002) the Ninth Circuit instead addressed only the scope of the term "producing," but did not address any of the issues raised herein because they were not presented by the parties.  Without mentioning the constitutional ramifications, the court observed in dicta that the defendant's conduct fell within the statute because the defendant's computer disks had been manufactured at an overseas location.  *Id.* at 871 n.2.

"jurisdictional element is not alone sufficient to render section 2252(a)(4)(B) constitutional" and upholding statute under "market theory"); *United States v. Angle*, 234 F.3d 326, 337 (7th Cir. 2000) (noting "doubts" regarding constitutionality of the jurisdictional element, but declining to consider the jurisdictional language of statute and concluding instead that "the statute passes constitutional muster as a category three regulation via a market theory"); *Rodia*, 194 F.3d at 473-79 (ignoring jurisdictional basis selected by Congress and instead upholding statute under market theory); *United States v. Robinson*, 137 F.3d 652, 656 (1st Cir. 1998) (citing jurisdictional element but concluding that statute is constitutional because it regulates activities substantially affecting commerce). These courts have reached this conclusion even though the statute itself contains no language pertaining to a "substantial effects" theory of jurisdiction.

This innovative and unsupported approach to statutory interpretation is constitutionally impermissible. In fact, as the plain language of both statutes require, this Court must instead determine whether jurisdiction is valid in light of the limited jurisdictional basis selected by Congress -- the prior movement of content-free items "in commerce." The existence of any "interstate market" is irrelevant to this inquiry because Congress did not incorporate an "affecting commerce" basis into the jurisdictional element. When properly analyzed, the statutes must be found to exceed Congress' authority under the Commerce Clause.

## II.     The Legislative History of 18 U.S.C. § 2252A(a)(5)(B)

In assessing the constitutionality of the instant prosecution, the legislative history of 18 U.S.C. § 2252A(a)(5)(B) merits discussion. In 1978, 18 U.S.C. § 2252 was passed by Congress to enable federal prosecutors to combat child pornography. The provision at that time outlawed the transportation for sale and/or the receipt for sale of any child pornography which had traveled in interstate commerce. The legislative history of the provision indicates that Congress sought to target large-scale producers and distributors of child pornography and to curtail what was understood to be a profitable nationwide industry, as evidenced by the following concerns:

- That child pornography and child prostitution have become highly organized, multimillion dollar industries that operate on a nationwide scale.
- That the use of children as prostitutes or as subjects of pornographic materials is very harmful to both the children and society as a whole.
- That such prostitution and the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce, and
- That existing Federal laws dealing with prostitution and pornography do not protect against the use of children in these activities and that specific legislation in this area is both advisable and needed.

1978 U.S. Code Cong. and Admin. News at 42-43.

In addition, Congress noted that:

In addressing this issue, the Committee is well aware of the delicate balance that must be maintained between federal and state and local law enforcement efforts to curb criminal behavior. It is quite true that the general responsibility for dealing with criminal activity is normally not a matter of Federal concern. At the same time, however, the Committee is convinced that the use of children in the production of pornographic materials is a matter that cannot be adequately controlled by state and local authorities. What is needed is a coordinated effort by Federal, state and local law enforcement officials aimed at eradicating this form of child abuse.

*Id.* at 48.

Nonetheless, Congress decided when it passed the precursor to § 2252 that it would pay deference to the "delicate balance" between federal and state law enforcement, setting forth the following expression of intent:

It is the Committee's intention that the government will have the affirmative burden of showing that the person charged knew or should have known that the materials described under 2251(a) and (b) will be transported in interstate or foreign commerce or mailed. While the Committee recognizes that the jurisdictional element is often a difficult one to prove, it nonetheless believes that this requirement is necessary to preserve the balance between the law enforcement responsibilities of Federal officers on one hand, and their state and local counterparts, on the other.

*Id.* at 53.[5]

18 U.S.C. § 2252 was amended over the years to expand its coverage. In 1984, for example, the statute was enlarged to cover individuals who reproduce child pornography for distribution in interstate or foreign commerce. The legislative history of what later became 18 U.S.C. § 2252(a)(2) noted that:

Paragraph (6) creates a new offense of knowingly reproducing any visual depiction for distribution in interstate or foreign commerce or through the mails. This offense closes a

---

[5]   § 2251 (a) and (b) were later codified as 18 U.S.C. § 2252.

7

loophole which has required proof that the producers of child pornography actually use the child depicted in the production of the material.  This new offense will make prosecution of those who make or produce child pornography easier by applying the offense to those who merely reproduce such materials for distribution.

As with the original statute, the focus of this revision remained upon the industry-wide use of the mails by distributors of child pornography.  Until 1990 then, 18 U.S.C. § 2252 did not apply to simple possession of child pornography, but rather only to individuals who knowingly transported, shipped, or mailed child pornography in interstate or foreign commerce, or who knowingly received such material which had been shipped, transported or mailed in interstate or foreign commerce.

In 1990, Congress expanded § 2252 in an unprecedented fashion by adding a sentence to § 2252(a)(2) making it illegal to receive a tape which "contains material" which has been transported in interstate commerce.  Congress further added to § 2252 the new subsection (a)(4)(B), which prohibited the simple possession of child pornography that had been mailed, shipped or transported in interstate commerce, or that was produced using materials that had been mailed, shipped or transported in interstate commerce.  Subsequently, in 1996, Congress enacted section 2252A as part of the Child Pornography Prevention Act.  While the two statutes now prohibit essentially the same activities, section 2252A differs from section 2252 in that the crime of simple possession is contained in subsection (5) of 2252A rather than subsection (4), as in section 2252.  Substantively, section 2252A differs from section 2252 in that the former statute now uses the statutorily defined term, "child pornography," a term that was also added as part of the 1996 Act.  *See* Shannon, The Jurisdictional Limits of Federal Criminal Child Pornography Law, 21 U. Haw. L. Rev. 73, 82-83 (1999).

Unfortunately, there appears to be absolutely no legislative history produced by Congress as to why it saw fit to expand the scope of § 2252 in such a fashion.  *See* 1990 U.S. Code and Admin. News 6472 *et seq.*  Nor did Congress make any findings suggesting that simple possession of child pornography would bear any connection to the purported nationwide market referenced in the 1978 legislative history.  Thus, the intent of Congress with respect to the need for these provisions is

8

1    unknown.

2          In fact, commentators have observed that almost no current commercial market exists in the

3    United States for child pornography.  *See* John Quigley, Child Pornography and the Right to Privacy,

4    43 Fla. L. Rev. 347, 359-60 & nn. 118-19 (1991) ("Commercial production and distribution of child

5    pornography existed in the United States in the 1970s, but virtually ceased after 1980.").  Several

6    decades ago, at the time that the federal government first passed anti-child pornography legislation in

7    this area, child pornography represented a small portion of the pornography industry in the United

8    States.  *See id.* at 369 n.118 (quoting Illinois Legislative Investigating Comm'n, Sexual Exploitation

9    of Children:  A Report to the Ill. Gen. Assembly 30 (1980)) ("Pornography and other sex-related

10   'industries' continue to be enormous operations in this country.  However, neither child pornography

11   nor child prostitution has ever represented a significant portion of the industry.").  Whatever the

12   market may have been twenty-five years ago, empirical evidence indicates that this market has now

13   almost entirely collapsed.  *See id.* at 359 n.119 (quoting 1 U.S. Dep't of Justice, Attorney General's

14   Commission on Pornography:  Final Report 648 (1986)) ("'When the Supreme Court in 1982

15   approved of child pornography laws . . . enforcement efforts accelerated, and the sum total of these

16   enforcement efforts has been to curtail substantially the domestic commercial production of child

17   pornography.'"); *id.* (quoting American Civil Liberties Union, Polluting the Censorship Debate:  A

18   Summary and Critique of the Final Report of the Attorney General's Commission on Pornography

19   104 (1986) ("'[T]here is virtually no commercial marketing of child pornography in the United

20   States.'").  Modern-day child pornographers rely on an underground network of trading materials on

21   a non-commercial basis, further drying up the commercial market.  *See Rodia*, 194 F.3d at 480

22   (citing H.R.Rep. No. 99-910, at 4, and H.R.Rep. No. 98-536, at 11).  Earlier Congressional findings

23   from 1978 regarding the existence of this industry are thus of limited value in determining the extent

24   of the market today.

25
     III.    **The Statutes Must be Struck Down As Facially Unconstitutional**
26

9

A.      *Lopez*, *Morrison*, and *Jones* Require That the Jurisdictional Element Serve as a
        Meaningful Restriction on Congress' Regulatory Power

As enumerated by the Supreme Court, the Commerce Clause of the Constitution empowers
Congress to regulate three categories of activity:  (1) "the use of the channels of interstate
commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate
commerce, even though the threat may come only from intrastate activities"; and (3) "activities
having a substantial relation to interstate commerce." *Lopez*, 514 U.S. at 558-59.  In light of the
jurisdictional language of sections 2251(a) and 2252A(a)(5)(B), targeting movement of the materials
"in interstate or foreign commerce," the breadth of the second category is implicated in this
jurisdictional challenge.

In the last decade the Supreme Court has signaled a growing discomfort with the expansion
of federal criminal statutes through Congress' reliance on its Commerce Clause power, into the
province of what has traditionally been state police power.  This trend has culminated in the last term
with two additional pronouncements by the Supreme Court in this area:  *Morrison*, 529 U.S. at 598,
and *Jones*, 529 U.S. at 848.  An understanding of the guiding principles set forth in these cases is
necessary to an analysis of the constitutionality of sections 2251(a) and 2252A.  Indeed, should this
matter proceed to the Supreme Court, it may be that *United States v. Croxford* will result in the
fourth and most definitive statement yet of the limitations on Congress' Commerce Clause power.

In *Lopez*, *Morrison*, and *Jones*, the Supreme Court has re-established the basic constitutional
proposition that the Founders did **not** cede to Congress a general police power.  Instead, to justify a
Congressional attempt to regulate intrastate criminal activity, the activity to be regulated must fall
under one of three categories.  The starting point for this analysis is the jurisdictional language
selected by Congress -- in other words, has Congress sought to regulate the use of the "channels" of
commerce, the movement of materials "in commerce," or specified  activities "substantially
affecting" commerce?  According to *Jones*, if the language of the jurisdictional element uses the term

1  "affecting commerce," then Congress is deemed to have signaled its intention to invoke its full

2  authority under the Commerce Clause. *See Jones*, 529 U.S. at 854.  In contrast, if the statute uses the

3  term "in commerce," then Congress is invoking a more restricted basis for its Commerce Clause

4  authority.

5      Where Congress signals its intention to rely upon its full authority to regulate activities

6  "affecting commerce," *Lopez* teaches that the proper test for interstate nexus under that category is

7  that the activity "'substantially affects' interstate commerce." *Lopez*, 514 U.S. at 559.[6]  To

8  determine whether there is a substantial effect, several considerations are pertinent to the analysis.

9  First, the reviewing court should inquire whether the activity itself is economic in the sense of being

10  part of a larger economic regulatory scheme.  *Lopez, Jones*, and *Morrison* teach that intrastate

11  criminal activity is not economic in this sense.

12      Where the local activities are not economic and are not being regulated as part of a national

13  economic scheme, Congress would lack the power to regulate those local activities.  *See Lopez,* 514

14  U.S. at 558 (activities with de minimis impact on commerce may be regulated pursuant to "a general

15  regulatory statute [that] bears a substantial relation to commerce"); *id.* at 567 (de minimis standard

16  not appropriate where regulated activity "is in no sense an economic activity that might, through

17  repetition elsewhere, substantially affect . . . interstate commerce"); *Morrison*, 529 U.S. at 611

18  ("*Lopez*'s review of Commerce Clause case law demonstrates that in those cases where we have

19  sustained federal regulation of intrastate activity based upon the activity's substantial effects on

20  interstate commerce, the activity in question has been some sort of economic endeavor.").

21      Second, the reviewing court should look to whether the statute has a jurisdictional element

22  _____

23  [6] *Lopez* and *Morrison* are primarily concerned with the limits of Congress' power under
   "category three," through which Congress may regulate a "class of activities" that "affect

24  commerce," even though the local activities have only a de minimis effect on commerce.  Because
   sections 2251(a) and 2252A are "category two" statutes predicated on Congress' narrow power to

25  regulate the movement of things "in commerce," those cases are not directly relevant here.
   Nonetheless, *Lopez* and *Morrison* raise issues regarding statutory analysis that are relevant here,

26  particularly because some circuits have erroneously relied upon *Lopez* and *Morrison* to uphold the
   statutes.

11

that requires a particularized showing of interstate nexus. When a jurisdictional element appears in a statute, that element "would lend support" to the argument that the statute is sufficiently tied to interstate commerce. *Morrison*, 529 U.S. at 613. However, "'[w]hether particular operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question, and can be settled finally only by [the Supreme] Court.'" *Id.* at 614 (quoting *Lopez*, 514 U.S. at 557 n.2).

Third, a court may look to legislative findings as support for a sufficient interstate nexus. But if Congress' method of reasoning in making such findings would permit the untenable conclusion that every activity would be within reach of national regulation, then such findings must be rejected. Notably, the Supreme Court applied this principle in *Morrison,* in which the Court considered a federal statute that was supported by "numerous findings" regarding the effect of gender-motivated violence on commerce. *See id.* The *Morrison* Court, however, deemed the Congressional findings insufficient to establish interstate nexus. *Id.* at 615-17. The Court further noted that the same faulty reasoning employed in that statute would lead to permitting Congress to regulate such traditional areas of state regulation as family law. *See id.* at 615-16; *id.* at 617 ("We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.").

The Supreme Court has rejected reasoning about aggregate effects of non-economic activities because such reasoning leads to unacceptable results. As the Court observed in *Lopez*, if the nexus to commerce could be demonstrated through the aggregation of purely local non-economic activities, the Court would be "hard pressed to posit any activity by an individual that Congress is without power to regulate." *Lopez,* 514 U.S. at 565; *see also id.* at 602 (Thomas, J., concurring) ("If we wish to be true to a Constitution that does not cede a police power to the Federal Government, our Commerce Clause's boundaries simply cannot be defined as being commensurate with the national needs . . . . Such a formulation of federal power is not a test at all: It is a blank check.") (citations omitted). In the same vein, in Justice Stevens' concurrence in *Jones*, he spoke of his discomfort with

12

1    a statute that effectively displaces a state statute.  *See Jones,* 529 U.S. at 859 (Stevens, J.,

2    concurring).  He stated his reluctance

3           to believe Congress intended to authorize federal intervention in local law enforcement in a
             marginal case such as this.  The fact that petitioner received a sentence of 35 years in
4            prison when the maximum penalty for the comparable state offense was only 10 years,
             illustrates how a criminal law like this may effectively displace a policy choice made by the
5            State.

6    *Id.* (internal citations and quotation marks omitted).

7
        **B.      The Statutes are Facially Invalid Because the Jurisdictional Element Has**
8
                 **No Meaningful Connection to the Targeted Conduct and Because the**
9
                 **Jurisdictional Elements Would Cede to Congress a General Police Power**
10

11          Sections 2251(a) and  2252A(a)(5)(B) invoke Congress' power under *Lopez*'s category two:

12   regulation of things moving "in commerce."  As relevant here, the statutes permits federal

13   prosecution on a showing that the "materials" subsequently used to produce the pornography were

14   previously "mailed, or shipped or transported in interstate or foreign commerce."  The statute

15   contains no jurisdictional language invoking category three of Congress' power, which would permit

16   prosecution by virtue of a showing that the defendant's conduct "substantially affected" commerce.[7]

17          These statutes, which grant federal jurisdiction by virtue of the prior movement of any

18   "materials" later used to produce pornography, is unconstitutional on its face because it can never be

19   applied in a constitutionally adequate manner.   Three characteristics of the jurisdictional element

20   demonstrate its unconstitutionality.  First, the statute impermissibly regulates pursuant to a

21   jurisdictional theory that has no stopping-point, in that the statutes predicate jurisdiction on the out-

22

23   _____

24          [7] By comparison, this jurisdictional element is in contrast with the jurisdictional language of
        another well-known possession statute, 18 U.S.C. § 922(g), prohibiting possession of a firearm by a
        felon where that possession is "in or *affecting* commerce," and is also in contrast with the
25      jurisdictional element of 18 U.S.C. § 844(i), which makes it a federal crime to "maliciously
        damage[] or destroy[] . . . any building . . . used in interstate or foreign commerce or in any activity
26      *affecting* interstate or foreign commerce."

                                                                                                          13

1   of-state origin of common consumer goods that are later used for criminal purposes. Second, the

2   jurisdictional element is not meaningfully related to the targeted conduct, with the result that the

3   statute itself contains no limiting condition on the activities to which it may be applied. Thus, the

4   task of drafting and applying a meaningful jurisdictional element is impermissibly left to the courts.

5   Third, unlike other statutes regulating the movement of things in commerce, the jurisdictional

6   elements here are not aimed at the movement of any illegal "thing in commerce," but are instead

7   aimed at the subsequent production or possession of an illegal thing based on the historical fact that

8   some component of the item was once in commerce. This logical absurdity is only highlighted by

9   the fact that, at trial, the government will be required to prove a *recent* movement in commerce, even

10   though the regulated item is not alleged to have moved in commerce at any time.

11        At the outset, the statutes must fail because they are predicated on a jurisdictional theory that

12   would impermissibly permit Congress to regulate all local criminal activities. As the language of the

13   statutes demonstrates, jurisdiction is premised on the out-of-state origin of "materials" later used to

14   commit criminal activities. In our modern society, however, virtually all consumer goods contain at

15   least some component which originated outside the state in which the defendant later possesses

16   them. Indeed, as Justice Kennedy noted on a related point in his concurrence in *Lopez,* "[i]n a sense

17   any conduct in this interdependent world of ours has an ultimate commercial origin or consequence,

18   but we have not yet said the commerce power may reach so far." *Lopez,* 514 U.S. at 580 (Kennedy,

19   J., concurring). The reach of this jurisdictional theory is limitless, such that the Court would be

20   "hard pressed to posit any activity by an individual that Congress is without power to regulate." *Id.* at

21   565. Here, for example, Mr. Croxford finds himself in federal court only for the most trivial reason:

22   he used a digital camera, computer disk and hard drive made outside Utah. This sort of prosecution

23   must fail because the acquisition and possession of the content-free materials subsequently used to

24   produce the pornography are not unlawful acts and thus fall outside Congress' regulatory power. A

25   defendant's subsequent use of the materials for illicit purposes cannot suddenly give rise to federal

26   jurisdiction, because such logic would also permit Congress to regulate any conduct with respect to

14

1  any consumer good transported from another state.[8]

2       Second, the out-of-state origin of any "materials" that may be used for innocent activities

3  cannot provide a basis for regulation of possession of child pornography because there is no

4  consequential relationship between the interstate movement of the materials and the later use for

5  pornographic purposes.  The jurisdictional element thus fails to act as a meaningful restriction on

6  Congress' regulatory power. Indeed, even the most trivial variation in the facts would destroy the

7  basis for federal jurisdiction:   if the pornography in this case had been produced using materials that

8  originated in Utah, Mr. Croxford would not be subject to federal prosecution.  Moreover, there is no

9  requirement that Mr. Croxford himself had purchased the camera, disk or hard drive, such that he

10  could be prosecuted in federal court for creating a visual depiction of child pornography or simple

11  possession of child pornography even where the disk and hard drive had been purchased by someone

12  else.

13       Federal prosecution is thus predicated on a level of triviality and attenuation that is almost

14  Kafka-esque in its absurdity.  Indeed, as the Sixth Circuit noted in *Corp*, "A painter using a model

15  who was just under 18, even if it was his wife, would fall afoul of the statute if the paints, brushes, or

16  canvas had traveled in interstate commerce, even long before the enactment of the act." *Corp*, 236

17

18      [8] Compare, for example, the findings underlying the Popcorn Promotion, Research, and
19  Consumer Information Act, which is part of the Federal Agriculture Improvement and Reform Act of
    1996:
20          Congress finds that--
        (1) popcorn is an important food that is a valuable part of the human diet;
21          (2) the production and processing of popcorn plays a significant role in the economy of the
        United States . . .
22          (3) popcorn must be of high quality, readily available, handled properly, and marketed
        efficiently to ensure that the benefits of popcorn are available to the people of the United
23          States . . .
        . . .
24          (6) popcorn moves in interstate and foreign commerce, and popcorn that does not move in
        those channels of commerce directly burdens or affects interstate commerce in popcorn.
25  Pub.L. 104-127, 110 Stat. 888, 1074 (1996).               (con't)
    On these findings, could Congress criminalize all popcorn-related activities?  The answer
26  must be no.  Such a hyperextension of Congress' power to regulate would certainly cede to Congress
    a general police power.

1    F.3d at 331.

2          Commentators have evaluated precisely this issue in the context of the new Gun Free School

3    Zone Act enacted after the Supreme Court struck down the earlier version challenged in *Lopez*. *See*

4    Litman & Greenberg, Federal Power and Federalism: A Theory of Commerce-Clause Based

5    Regulation of Traditionally State Crimes, 47 Case W. Res. L. Rev. 921 (Spring 1997) (hereinafter

6    "Litman and Greenberg")

7          Writing prior to the enactment of the new act, Litman and Greenberg assessed whether the

8    inclusion of a jurisdictional element requiring movement of the firearm "in commerce" would render

9    the statute constitutional.  Litman and Greenberg argue that jurisdiction predicated on

10   movement "in commerce" should not pass constitutional muster unless the movement of the item

11   across state lines is a dominant cause of the harm Congress seeks to regulate.   Thus, the authors

12   argue, the interstate movement of a gun subsequently possessed near a school would be a dominant

13   cause of the regulated activity, while the fact that the gun was covered with paint that had traveled

14   interstate would not be a dominant cause.  Applying this test here, the issue presented is whether

15   sections 2251(a) and 2252A(a)(5)(B) regulate an action that has a direct causal relationship to the

16   harm of child pornography, or whether it regulates incidental activity.

17         Clearly, the statute regulates incidental activity because the movement of content-free

18   consumer products from an out-of-state location is not the cause of the creation or possession of

19   child pornography.  It may well be that a defendant could not possess child pornography without

20   such material, any more than he could make child pornography without breathing air, which

21   assuredly has traveled across state lines.  However, the jurisdictional basis exceeds Congress'

22   authority where the basis for federal regulation is not the movement of pornography itself but the

23   movement of innocent, non-harmful, content-free things that are later used to produce the

24   pornography.   Here, for example, Mr. Croxford is being prosecuted for his possession of consumer

25   products that once crossed a state line and that were later used to record depictions or store

26   pornography, after which federal jurisdiction arose.  The complexity of this inferential chain itself

1  points up the absurdity of the prosecution.

2      In the absence of a consequential relationship between the jurisdictional element and the

3  regulated conduct, federal jurisdiction should not arise unless the regulated item had moved in

4  commerce.  By comparison, even in the context of 18 U.S.C. § 922(g) -- which already involves a

5  hyperextension of Congressional power --  federal jurisdiction arises because the firearm possessed

6  by the felon had crossed a state line.

7      Finally, related case law in the Ninth Circuit underscores the fatal flaw in this statute.  Should

8  Mr. Croxford's challenge fail and this matter proceed to trial, the government will be obligated to

9  demonstrate that the item has *recently* moved in commerce, because an item or article cannot be

10  deemed *forever* "in interstate commerce" based on one past movement across state lines.  *See United*

11  *States v. Nukida*, 8 F.3d 665, 671 (1993).  Indeed, in several cases, the Ninth Circuit has held that

12  determination of the interstate nature of stolen articles is a question of fact for the trier of fact.  *See*

13  *id.* (citing *inter alia United States v. Jones*, 564 F.2d 1315 (9th Cir. 1977) and *United States v.*

14  *Cyphers*, 604 F.2d 635 (9th Cir. 1979)).  This requirement provides a further angle from which to

15  view the hyperextension of Congress' authority in sections 2251(a) and 2252A, because the

16  government would  be unable to prove that the regulated item itself had moved in commerce.

17  Instead, the government would seek to establish that the camera, disk and hard drive had recently

18  moved in commerce before the defendant used them, even though it is not the purchase or possession

19  of these items which is illegal.  Rather, it is recording the depictions of child pornography and

20  possession of the child pornography contained on them.

21      Any link to commerce under sections 2251(a) and 2252A are too attenuated to support such a

22  serious prosecution as the one in this case.  If such a link is sufficient, then there is scarcely any item

23  or activity that is not subject to regulation by Congress.  For example, Congress could regulate

24  physical assaults involving weapons by outlawing the use of weapons that moved in commerce.

25  Moreover, virtually any murder involving a gun would fall within federal jurisdiction because the

26  majority of firearms and bullets have crossed state lines at some point in their history.  *See, e.g.,*

1  *Kallestad*, 236 F.3d at 229 ("It is one thing for Congress to prohibit possession of a weapon that has

2  itself moved in interstate commerce, but it is quite another thing for Congress to prohibit homicides

3  using such weapons.").

4  There is absolutely no difference between this sort of impermissible logic and the logic

5  underlying these prosecutions under sections 2251(a) and 2252A. Because such reasoning

6  obliterates the national/local allocation of powers intended by the Constitution, sections 2251(a) and

7  2252A(a)(5)(B) must be struck down

8  .

### C.   The Court Cannot Insert a "Substantial Effects" Jurisdictional Element Into

9

###       the Statutes Because that Element was Not Included by Congress, and Because

10

###       There are No Current Findings to Support a Market Rationale

11

12

13  Finally, as an alternative jurisdictional basis, the government may attempt to argue that the

   statute is permissible as a category three regulation of de minimis local activities with a "substantial

14

   effect" on commerce in the aggregate. Several circuits, ignoring the clear language of the statute,

15

   have upheld section 2252(a)(4)(B) under this category. *See Kallestad*, 236 F.3d at 229; *Angle*, 234

16

   F.3d at 337; *Rodia*, 194 F.3d at 473-79; *Robinson*, 137 F.3d at 656. Notably, the Fifth Circuit

17

   reached this conclusion in *Kallestad* over a strong dissent by Judge E. Grady Jolly in which he

18

   argued that, under *Lopez* and *Morrison*, simple possession of child pornography is a non-economic

19

   activity that Congress lacks the power to regulate. *See Kallestad*, 236 F.3d at 233 (Jolly, J.,

20

   dissenting).

21

   None of those authorities may be relied upon here. The courts that have taken this alternative

22

   approach have done so in recognition of the fatal flaw in Congress' logic, and have thus explicitly

23

   upheld the statute on grounds not provided by Congress. *See, e.g., Rodia*, 194 F.3d at 473-79 (noting

24

   serious flaws in jurisdictional basis selected by Congress, and instead upholding statute under market

25

   theory); *Angle*, 234 F.3d at 337 (same); *Kallestad*, 236 F.3d at 229-30 (same ). However,

26

1   particularly after *Lopez*, this Court must assess the statute as written, and may not endeavor to

2   substitute a "winning rationale" for Congress.[9]  Moreover, any attempt to rely on a "substantial

3   effects" theory also fails on the merits in light of the absence of appropriate and current legislative

4   findings to support this basis for jurisdiction.

5          First, as noted above, the language of the statutes preclude this interpretation.  As the

6   Supreme Court has noted in the context of other federal statutes using only "in commerce" language,

7   Congress recognizes the distinction between the jurisdictional terms "in commerce" and "affecting

8   commerce," and recognizes as well that the "in commerce" language provides a more limited basis

9   for its jurisdiction.  *See United States v. American Building Maintenance Industries*, 422 U.S. 271,

10  279-81 (1975).  Where Congress selects the jurisdictional language "in commerce," Congress is

11  understood to intend to regulate only the flow of items in commerce, and not the substantial effects

12  of the activity upon commerce.  *See id.*  Here, in light of Congress' choice of language pertaining to

13  *mailing, shipping, or transporting in interstate or foreign commerce*, the instant prosecution can

14  therefore only proceed on a showing that some component of the regulated item moved in the flow

15  of commerce.  *See Gulf Oil Corp. v. Copp Paving Co*, 419 U.S. 186, 195 (1974) (noting that "in

16  commerce" refers to "practical, economic continuity in the generation of goods and services for

17  interstate markets and their transport and distribution to the consumer"); *FTC v. Bunte Bros.*, 312

18  U.S. 349, 354-55 (1941) (declining to extend reach of unfair competition act to include activities

19  substantially affecting commerce without "a clearer mandate from Congress" because statute referred

20  only to unfair competition "in commerce" and a broader reading of the statute would constitute a

21  "far-reaching" "inroad upon local conditions and local standards").

22         The legislative history supports this conclusion because Congress repeatedly referred to the

23

24         [9] As commentators have noted with regard to the rationale of *Lopez*, "the *Lopez* Court's
25  unwillingness to supply a winning rationale [for 18 U.S.C. §922(q)] was what distinguished it from
    earlier Commerce Clause decisions."  Reynolds & Denning, Lower Court Readings of *Lopez*, or
26  What if the Supreme Court Held a Constitutional Revolution and Nobody Came?, 2000 Wis. L. Rev.
    369, 402 n. 100 (2000).

1  use of the mails by child pornographers as the basis for jurisdiction. *See, e.g.*, 1978 U.S. Code Cong.

2  and Admin. News at 42-43 ("such prostitution and the sale and distribution of such pornographic

3  materials are carried on to a substantial extent through the mails and other instrumentalities of

4  interstate and foreign commerce"). Thus, in light of Congress' selection of a more specific

5  jurisdictional element, the reasoning of *Kallestad, Robinson, Rodia*, and *Angle* must be rejected

6  because Congress' choice of words is dispositive on this issue and the courts may not give a broader

7  reach to the statute without clearer direction from Congress. *See Bunte Bros.*, 312 U.S. at 354-55.

8        The error in this logic is also demonstrated by the fact that a market theory approach would

9  impermissibly invert the jurisdictional element. The Third Circuit's analysis in *Rodia* highlights the

10  error. There, the court concluded that the possession of "home grown" child pornography

11  substantially affected commerce because such possession would stimulate the pornographer's

12  appetite for pornography, leading him to "look to the interstate market as a source of new material,

13  whether through mail order catalogs or through the Internet." *See Rodia*, 194 F.3d at 477. Other

14  courts have followed this method of analysis. *See, e.g., Angle*, 234 F.3d at 337-38 (adopting *Rodia*'s

15  analysis).

16        In fact, in contrast to the *Rodia* court's *prospective* analysis of jurisdiction, the language of

17  the statute instead requires a *retrospective* determination that the materials had previously moved in

18  commerce, as discussed above. Congress did not provide that jurisdiction could be proved through

19  conjecture regarding a *future* demand for child pornography, because the statute contains no

20  language permitting a prospective analysis under a market theory. Rather, the statute requires proof

21  of mailing, shipping, or transporting across state lines. In light of this limited focus, the government

22  must demonstrate that jurisdiction is permissible based solely on a showing that the production

23  materials previously moved "in commerce."

24        Finally, the third *Lopez* category is also inapplicable because there are no current legislative

25  findings to support two crucial predicates for category-three legislation: (1) Congress must find that

26  the local activity is commercial in nature; and (2) Congress must find that local activities may be

20

1  regulated in light of the national economic impact of the activity.   Regarding the first requirement,

2  *Lopez* and *Morrison* mandate that the regulated activity must itself be commercial in nature because

3  non-economic activities may not be aggregated to demonstrate a substantial effect on commerce.  *See*

4  Reynolds & Denning, Lower Court Readings of Lopez, or What if the Supreme Court Held a

5  Constitutional Revolution and Nobody Came?, 2000 Wis. L. Rev. 369, 381 (2000) ("Effects upon

6  interstate commerce may be 'aggregated' in *Wickard* fashion only where the activity in question is

7  economic -- that is, commercial."); *Corp*, 236 F.3d at 329, 333 (noting that court considering

8  Commerce Clause challenge must consider four factors, including whether "the prohibited activity

9  [is] commercial or economic in nature," but declining to determine whether defendant's conduct was

10  commercial in light of reversal on other grounds).

11       There are no express legislative findings to support the conclusion that local recording of

12  explicit visual depictions of minors or possession of child pornography are commercial activities

13  with an effect on national commerce.  *See Rodia*, 194 F.3d at 480 ("We are troubled by the lack of

14  express Congressional findings about the effect of intrastate possession of child pornography on

15  interstate commerce."); *Kallestad*, 236 F.3d at 233 (Jolly, J., dissenting) (noting that "no

16  congressional findings support the necessity of such regulation in the framework of a broader

17  regulatory scheme").  Thus, the Third Circuit in *Rodia* did not conclude that local pornographic

18  activities are themselves commercial, but instead relied on *Wickard v. Filburn*, 317 U.S. 111 (1942)

19  to conclude that "homegrown" pornography substantially affects commerce because it bears a

20  connection to the purported nationwide industry and has an "obvious commercial element."  *See*

21  *Rodia*, 194 F.3d at 480-82; *see also Angle*, 234 F.3d at 337-38 (same); *Kallestad*, 236 F.3d at 228

22  (same).  This reliance on a *Wickard* theory of aggregation[10] was rejected by Judge Jolly in his well-

23

24       [10] In *Wickard v. Filburn*, 317 U.S. 111, 125 (1942), the Supreme Court upheld a federal
statute permitting the imposition of a marketing penalty on wheat grown for home consumption.  The
25  Court held that a farmer could permissibly be required to pay a tax on wheat grown for home
consumption where that wheat exceeded the farmer's allotment for the year, because the farmer's
26  activities interfered with a national economic scheme to regulate the price of wheat.  *See id.* at 128
("It is well established by decisions of this Court that the power to regulate commerce includes the

1    reasoned dissent in *Kallestad*, in which he concluded, "Kallestad's non-commercial, local possession

2    of child pornography, where no interstate transportation or commercial transaction occurred, had at

3    most an insubstantial affect on the interstate market for child pornography." *Kallestad*, 236 F.3d at

4    233 (Jolly, J., dissenting).

5        The so-called aggregation principle of *Wickard* must be carefully applied, lest *Wickard*

6    swallow the careful federalist principles established in the Constitution and underscored by *Lopez*

7    and *Morrison*. Here, *Wickard* should be found inapplicable for three reasons:  first, the statute does

8    not invoke Congress' category-three power, which is the only jurisdictional theory on which *Wickard*

9    is predicated; second, there is no indication that local possession is an economic activity; and third,

10   there are no current findings to support the conclusion that a national market exists. *See, e.g.,*

11   *Kallestad*, 236 F.3d at 232 (Jolly, J., dissenting) (footnote omitted) ("[T]he persuasiveness of

12   *Wickard* in the wake of *Lopez* and *Morrison* is questionable in the analysis of the criminal statute we

13   consider today.  Moreover, the facts before this court are distinguishable from those in *Wickard*.").

14       Regarding the second requirement of national economic consequences, proof of such

15   consequences is necessary because Congress gains its authority to regulate activities only by virtue of

16   their aggregate economic effect. *Morrison*, 529 U.S. at 613.  However, as noted earlier,

17   commentators have concluded that the commercial market for child pornography has substantially

18   abated since the 1970s. *See* discussion *supra* at pgs. 8-9.  There are no current legislative findings on

19   this issue.

20       Each of the courts that has relied upon a "market" theory to support section 2252A has found

21   the existence of a market on the basis of outdated Congressional findings from the mid-1980s and

22   the 1970s, such as Congress' finding in 1977 "that child pornography is a multimillion dollar,

23   nationwide industry." *See Rodia*, 194 F.3d at 480; *Kallestad*, 236 F.3d at 229 (citing Congressional

24

25   power to regulate the prices at which commodities in that commerce are dealt in and practices
26   affecting such prices.").

findings from 1977 and Attorney General's Report from 1986); *Corp*, 236 F.3d at 332 (citing Congressional findings from 1986); *Angle*, 234 F.3d at 337 (citing Congressional findings from 1978); *Robinson*, 137 F.3d at 656 (same).   Those findings provide no basis to assume that such an industry still exists.[11]   Reasoning based upon a market theory is thus inappropriate.

**IV.**     **Even if the Statutes are Facially Valid, the Instant Prosecution Must Fail Under the Case-by-Case Analysis Required by *Lopez*, *Morrison* and *Jones* Because the Facts Fail to Demonstrate a Sufficient Nexus to Interstate Commerce**

The Sixth Circuit, in *United States v. Corp*, 236 F.3d 325 (6th Cir.2001), reversed a conviction obtained under section 2252(a)(4)(B) on grounds that the defendant's conduct was not related to interstate commerce.  In *Corp*, the defendant had taken photographs of a 17-year-old girl while she engaged in sexual acts with his wife.  The only connection to interstate commerce was the fact that the photographs, which were taken in Michigan and then developed at a local pharmacy, were printed on photographic paper that had been manufactured outside Michigan.  In rejecting the government's argument that the jurisdictional element of the statute was satisfied by the mere movement of the paper from one state to another, the court instead conducted the "case-by-case" analysis required by *Lopez* and *Morrison*.  *See id.* at 332-33.  After first noting that the defendant had raised "serious questions" about the statute's constitutionality, the court declined to reach that issue and instead determined that the jurisdictional element must function as a "meaningful restriction" on federal regulation.  Applying that test, the court concluded that the statute failed as applied.[12]

---

[11] In response, the government may argue that a national market exists and that local acts are commercial in nature.  Should the government come forward with such evidence, this Court must then decide whether it may rely on this evidence in ascertaining the constitutionality of the statute, when it is Congress' function to provide adequate findings in the first instance.

[12] In its analysis, the *Corp* court erroneously relied upon category three, which Mr. Croxford has already argued does not apply to sections 2251(a) and 2252A.  Nonetheless, the *Corp* court found that the defendant's conduct did not substantially affect commerce for the following reasons:

1    In light of the limited jurisdictional basis of the statute, this Court must focus solely on the

2  movement of the camera, disk and hard drive to Utah. On the present facts, Counts One and Two

3  cannot stand because the link to commerce is wholly inadequate. While Mr. Croxford's subsequent

4  use of the camera, disk and hard drive may be reprehensible, the fact that these consumer goods were

5  manufactured outside Utah cannot give rise to federal jurisdiction because there is no causal

6  relationship between the jurisdictional element and Mr. Croxford's conduct, and because the link to

7  commerce is wholly attenuated. *See Hodel*, 452 U.S. at 277 (emphasis added) (Congress' chosen

8  means of regulation must relate "to the attainment of a legitimate end, *the effective execution of the*

9  *granted power to regulate interstate commerce*"). Rather than regulating commerce, the application

10  of the statutes to these facts would impermissibly regulate the purely intrastate creation and

11  possession of child pornography and would permit federal regulation of all local criminal activities.

12

13  **V.    The Portions of Sections 2251(a) and 2252A Supporting the Indictment Must be Struck**

14  **Down as Violative of the Equal Protection Clause of the Constitution**

15

16    Mr. Croxford would be immune from prosecution if his digital camera, computer disk and

17  hard drive had been manufactured in Utah. Similarly, if Mr. Croxford were an engineering wizard

18  who built his own camera, disk or hard drive, he would not be subject to prosecution. By the same

19  token, similarly situated child pornographers who use the same materials manufactured in Utah

20  would not be subject to federal prosecution under this statute. This arbitrary and disparate treatment

21  violates the Equal Protection Clause of the Constitution and requires that the portion of the statutes

22

23    Corp was not involved, nor intended to be involved, in the distribution or sharing with others
     of the pictures in question. [The victim] was not an "exploited child" nor a victim in any real
24   and practical sense in this case. In the other cases that have addressed this issue, the courts
     were faced with the much more threatening situation where an adult was taking advantage of
25   a much younger child or using the imagery for abusive or semi-commercial purposes.

26  *See id.*

24

1  underlying Counts One and Two be struck down. U.S. Const. amend. V.

2       "Equal protection does not require that all persons be dealt with identically, but it does

3  require that a distinction made have some relevance to the purpose for which the classification was

4  made." *Baxtrom v. Herold*, 383 U.S. 107, 111 (1966). Here, because the distinction between local

5  and out-of-state materials is not relevant in any meaningful way to the targeted conduct, section

6  2252A(a)(5)(B) cannot stand. Indeed, there is no rational basis for the distinction between in-state

7  and out-of-state materials other than the fact that the former category clearly falls outside Congress'

8  regulatory powers while the latter category evidences a Congressional attempt to expand its

9  jurisdiction over local criminal matters. Mr. Croxford is denied equal protection of the law because

10 other individuals using materials that bear no incidental connection to commerce cannot be

11 prosecuted. *Cf. United States v. Oliver*, 60 F.3d 547, 550 (9th Cir. 1995) (declining to consider equal

12 protection challenge to car-jacking statute because challenge had not been raised in district court).

13 Because this statutory fluke is not rationally related to any legitimate government interest, the

14 differing treatment therefore violates the Equal Protection Clause of the Constitution.

15      While Congress' efforts to eradicate creation and possession of child pornography may

16 indeed be advanced by the instant prosecution, this tautology does not address the core equal

17 protection issue: whether the distinction is rationally related to the goal. Plainly, it cannot be

18 contended that this is a rational distinction when the distinction arises simply because Congress has

19 no other choice under the Commerce Clause. Rather, if Congress can regulate only one category of

20 child pornographers by virtue of some trivial reason that is unrelated to their pornographic activities,

21 Congress must not be permitted to legislate in this area at all because it is constitutionally

22 impermissible to arbitrarily expose only certain people to the serious consequences of a federal

23 prosecution. *See Bush v. Gore* 121 S.Ct. 525, 530 (Dec. 12, 2000) (ordering end to recount of

24 Florida's votes in presidential election because different counties would use different standards to

25 determine "intent of voter," thus resulting in violation of equal protection through "unequal

26 evaluation of ballots"). More resourceful child pornographers may evade federal prosecution by

1  locating materials that have not crossed state lines or by choosing to live in a state where all the

2  necessary tools are manufactured.  This absurd result requires that the indictment be dismissed.

3

4  **VI.    Sections 2251(a) and  2252A(a)(5)(B) are Void for Vagueness Because the Term**

5  **"Materials" is Not Defined Anywhere in the Statutes, Thus Inviting Arbitrary Enforcement**

6  **and Precluding Ordinary Persons From Determining Whether Their Conduct Will Violate**

7  **Federal Law**

8          In order to withstand a constitutional challenge on grounds of vagueness, a statute must be

9  sufficiently clear that persons of common intelligence will not be forced to guess at its meaning and

10  application. *See United States v. Lanier*, 520 U.S. 259, 266 (1997).  The statute's terms will be void

11  for vagueness where those terms invite arbitrary and discriminatory enforcement. *See United States*

12  *v. Makowski*, 120 F.3d 1078, 1080 (9th Cir. 1997).  A statute is void for vagueness when it does not

13  sufficiently identify the conduct covered. *See id.*

14          Here, the statutes' operative terms giving rise to federal jurisdiction, the use of "materials" to

15  produce the pornography, is defined nowhere within sections 2251 or 2252A or the underlying

16  statutory scheme.   Definitions for the chapter are contained in 18 U.S.C. § 2256, but the term

17  "materials" is not found therein.  "Materials," then, could mean the linoleum on which one stands to

18  film a pornographic act, the hairs in the paintbrush used to paint a nude portrait, the light fixture used

19  to illuminate the room where photographs are taken, or even, as suggested earlier, the air that one

20  must breathe while producing the pornographic image.  While Congress may have inserted the term

21  "materials" to provide the federal government with a flexible enforcement tool, it is clear that the

22  tool is too flexible to be constitutionally permissible.  Rather, ordinary persons would have no way of

23  knowing whether their conduct is covered by the act.  Indeed, the only limiting factor would be the

24  creativity of federal agents in determining whether some minuscule component of the defendant's

25  operation had previously existed in another state or country.

26

26

1    This vagueness permits the government to arbitrarily charge only certain cases in federal

2  court, without any discernible limits on its charging function.  It also precludes ordinary people from

3  recognizing in advance whether their conduct will fall within the statute because people will not

4  understand the reach of the term "materials" and will generally have no knowledge regarding where

5  the component parts of their personal belongings were manufactured. *See Makowski*, 120 F.3d at

6  1080.  Because ordinary persons are left to guess at the meaning of the statutes and will not realize

7  that they have violated federal law until the government seizes and researches their belongings, the

8  portion of the statute pertaining to "materials" that moved in commerce must be struck down as

9  unconstitutionally vague.

10                                      **CONCLUSION**

11    For the foregoing reasons, Mr. Croxford respectfully requests that the Court dismiss the

12  indictment.

13  DATED this 24th day of January 2003.

14

15                                            L. Clark Donaldson
                                             Attorney for Mr.Croxford

16

17                                   Certificate of Service

18    I hereby certify that a copy of the foregoing Motion to Dismiss for Lack of Jurisdiction was

19  hand delivered/mailed first class postage prepaid to Assistant U.S. Attorney Michele Christiansen,

20  185 South State Street, Suite 400 this 24th day of January 2003.

21

22

23

24

25

26

                                                          27

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.